L. Kathleen Chaney, Esquire
Lambdin & Chaney, LLP
4949 S. Syracuse St., Suite 600
Denver, Colorado 80237
(303) 799-8889 – Telephone
(303) 799-3700 - Facsimile


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

Civil Action No. 2:10-CV-00208-ABJ

NANCY NEHL,

    Plaintiff,

v.

UNITED FIRE & CASUALTY COMPANY

    Defendant.

---

**REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT UNITED FIRE & CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS**

---

Defendant United Fire & Casualty Company, by and through its counsel, submits its reply to Plaintiff's Response to Defendant United Fire & Casualty Company's Motion for Summary Judgment Based on the Statute of Limitations as follows:

**INTRODUCTION**

This case involves a car accident that occurred more than 10 years ago. After settling with the tortfeasor more than 6 years ago, Plaintiff has finally decided to actively pursue a UIM claim under her employer's commercial automobile policy. In an attempt to escape being barred by South Dakota's statute of limitations, Plaintiff argues that Wyoming's 10-year statute of limitations for contract actions applies because the vehicle that she was using on a personal basis at the time of the accident was principally garaged in Wyoming and the policy was amended to add Wyoming coverage.

Plaintiff's argument must be rejected for two reasons: (1) it is undisputed that the policy was issued and delivered in South Dakota without a choice-of-law provision in the contract; and (2) an endorsement amending the contract did not replace or otherwise supersede the South Dakota contract, which mandates application of *lex loci contractus*.

Plaintiff next argues that assuming South Dakota law applies, her lawsuit is timely because actual payment by the tortfeasor was not made until after the settlement agreement was formally executed in October 2004. Plaintiff's argument on this issue is misplaced. The operative time is when she either knew that the tortfeasor was underinsured or, at the latest, when United Fire gave the Plaintiff permission to accept the tendered limits from the tortfeasor's liability carrier. Formal execution of settlement documents and actual payment by the tortfeasor are not required to start the clock ticking on the statute of limitations.

## I. RESPONSE TO PLAINTIFF'S MATERIAL FACTS AND ADDITIONAL UNDISPUTED FACTS

United Fire responds to Plaintiff's material facts and provides additional undisputed facts.

1. While Plaintiff may have been a Wyoming resident since 1977, the named insured, Silverado, Inc., has been a South Dakota corporation since its incorporation in 1963, 47 years ago. *See printout from South Dakota Secretary of State website attached as* **Exhibit N**.

2. At the time of the accident, Plaintiff Nancy Nehl was using a company vehicle for personal reasons and was not in the course and scope of her employment at the time of the accident. *See page 1 of* **Exhibit G** *attached to the MSJ wherein plaintiff states "we were going out to our house"; and page 2, 2nd ¶ of* **Exhibit I** *attached to the MSJ – "used on a personal basis such as the case here."*

3. Wyoming UM/UIM statutory requirements do not apply to insurance policies that were neither delivered nor issued for delivery in Wyoming.

4. While Wyoming law permits rejection of UM/UIM coverage, it is mandatory in South Dakota. Wyo. Stat. § 31-10-101; S.D.C.L. § 58-11-9.4.

5. Plaintiff does not dispute the following dispositive facts:
   - September 22, 2000 – Plaintiff first made her UIM claim;

- August 13, 2004 - United Fire gave Plaintiff permission to accept the tortfeasor's limits;
- August 27, 2010 – the action was commenced upon service of the lawsuit under South Dakota law.

## II. ARGUMENT

**A. Wyoming follows the traditional rule of *lex loci contractus*, mandating application of South Dakota law to this insurance contract that was issued and delivered in South Dakota.**

Plaintiff is correct that in diversity cases, the choice-of-law rules of the forum state determine which state's substantive law applies. ***Klaxon Co. v. Stentor Elec. Mfg. Co.***, 313 U.S. 487 (1941).

Wyoming employs the traditional rule of *lex loci contractus*. Under the principles of *lex loci contractus*, a contract is governed by the law of the jurisdiction within which the contract is made. "In interpreting a contract, our primary purpose is to determine the true intent and understanding of the parties at the time and **place the contract was made**." ***Wells Fargo Bank Wyo., N.A. v. Hodder***, 144 P.3d 401, 409 (Wyo. 2006) (emphasis added); ; *but cf.* ***Cherry Creek Dodge, Inc. v. Carter***, 733 P.2d 1024, 1027 (Wyo. 1987) citing *Restatement (Second) Conflict of Laws* § 188 in a U.C.C. case where Wyoming's Uniform Commercial Code, Wyo. Stat. § 34-21-105[1], statutorily requires a reasonable relation analysis only in the U.C.C. context; *see also* ***Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.***, 386 F.3d 581, 601 (4th Cir. 2004) (recognizing the presumption that

---

[1] Renumbered as Wyo. Stat. § 34.1-1-105.

4

interpretation of contract is governed by law of place where contract was made absent a choice-of-law provision in the contract); **Lister v. NationsBank of Del., N.A.**, 494 S.E.2d 449, 455 (S.C. 1997) ("[A] contract as to its validity and interpretation is governed by the law of the place where it is made the *lex loci contractus*.").

In the context of insurance contracts, Wyoming follows the rule that the law of the state where the insurance policy was delivered to the insured controls the interpretation of the insurance contract. In **Progressive Cas. Ins. Co. v. Brown's Crew Car of Wyo., Inc.**, 27 F. Supp. 2d 1288 (D. Wyo. 1998) (applying Wyoming choice of law rules), the court, observing that in a diversity case, a federal court must apply the substantive law that a state court sitting in that state would apply under its conflicts of law principles, held that because the subject insurance contract was made in Wyoming and the policy was issued to a Wyoming policyholder, Wyoming law on contract interpretation would apply. *See also* **Cincinnati Ins. Co. v. Girod**, 570 So.2d 595, 597 (Ala. 1990) (law of the state where an insurance policy is issued applies when interpreting that policy)

Because this is neither a U.C.C. case nor is there a choice-of-law provision in the insurance contract, the traditional rule of *lex loci contractus* applies. Here it is undisputed that the insurance contract was issued and delivered in South Dakota and therefore South Dakota law applies.

**B.  Neither an amendment to the contract, where the vehicle was garaged or where renewal premiums were made change the *lex loci contractus* analysis.**

Where the involved vehicle was principally garaged, or any subsequent amendment to the contract, or whether premiums were paid out of a Wyoming office, does not change the *lex loci contractus* analysis, as the original contract was not replaced nor was there a new Wyoming contract.

As seen in the policy attached as **Exhibit 9** to Plaintiff's response, the contract of insurance covered many different vehicles with the majority of them being principally garaged in South Dakota.  *See Document 27-9, pages 18, 23; and Document 27-10, pages 3 through 10, 14 through 21, 25; and Document 27-11, pages 1 through 6, 9 through 16, 22 through 28.*  Courts across the country have addressed similar cases involving companies insuring fleets of vehicles with a single policy with the vehicles dispersed across different states.

The great majority of decisions concerning fleet policies like the Silverado, Inc. policy in this case apply the home state's law, i.e., - the place where the policy was delivered.  In ***Pierzchalski v. Northbrook Prop & Cas. Co.***, 914 F.2d 263 (9th Cir. 1990), the court declined to impose the Arizona statutory requirements for UM/UIM coverage in the absence of a policy issued in Arizona.  Most other states which have considered the issue have declined to impose their UM/UIM statutory scheme on policies issued and delivered elsewhere (at least in the absence of legislation requiring local UM/UIM limits for any car *operated* within the state).  *See* ***Cherokee Ins. Co. Inc.***

*v. Sanches*, 975 So.2d 287, 293 (Ala. 2007) (applying the law of state where policy was "issued or issued for delivery" rather than that of state where the vehicle was principally garaged); *Burns v. Aetna Cas. & Surety Co.*, 741 S.W.2d 318, 322-23 (Tenn. 1987) (same); *Central Transp., Inc. v. Blake*, 985 S>W.2d 805, 809-10 (Mo. App. 1998) (same); *Ins. Co. of Penn. v. Hampton*, 657 A.2d 976, 979 (Pa. Super. Ct. 1995) (same); see also *Martin v. Lumbermen's Mut. Cas. Co.*, 559 A.2d 1028, 1031 (R.I. 1989) (explaining that UM/UIM statute that applies to policy "delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state . . . does not address itself to policies delivered and issued for delivery outside" of this state); *Lumbermens Mut. Cas. Co. v. August*, 530 So.2d 293, 295 (Fla. 1988) ("[T]he lex loci contractus rule determines the choice of law for interpretation of provisions of uninsured motorists clauses in automobile insurance policies just as it applies to other issues of automobile insurance coverage.").

Here, Wyoming statutory requirements (and hence Wyoming law) cannot be imposed on a policy issued and delivered in South Dakota. Most states that have considered the issue have declined to impose their UM/UIM statutory scheme on policies issued and delivered elsewhere at least in the absence of legislation requiring local UM/UIM limits for any car *operated* within the state. Wyoming law has no such requirement, and even permits the named insured to reject the coverage. Wyoming's UM/UIM statute, § 31-10-101, provides as follows:

7

> No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state [unless the policy includes UM/UIM coverage]. . . . The named insured may reject the coverage.

At the outset, it is helpful to consider the limits on the scope of section 31-10-101 which appear in the language of the statute. Section 31-10-101 applies:

(1)   only to insurance policies which may be delivered or issued for delivery in Wyoming; **and**

(2)   only to autos registered or garaged in Wyoming.

Unless both essential elements are met, the policy is not governed by Wyoming's UIM requirements. Section 31-10-101 has no application, for example, to a non-resident who drives in Wyoming with UM/UIM limits from a home state which fall short of Wyoming limits. In this regard, section 31-10-101 and similar provisions in other statutes regulate insurers, not motorists.[2]

In deciding which state's law controls with a statute containing the same language, a Maine court observed as follows:

> [f]or purposes of deciding which state's law controls, it is no small point that Maine's UIM requirement reaches only insurance contracts issued in the state of Maine, with respect to vehicles registered in or principally garaged in Maine. [Citation omitted]. Accordingly, *the State of Maine only*

---

[2] In contrast, liability limits for non-residents under the financial responsibility laws are directed at "owners" or "operators" of a motor vehicle. Wyo. Stat. §§ 31-9-404, 31-9-405. These individuals are required to meet Wyoming's minimum levels of insurance regardless of which state they buy their insurance in or where they garage their car. It would be no defense to a violation of § 31-9-405 to demonstrate that the motorist was from a state with lower (or no) financial responsibility limits. For this reason, most auto policies provide liability limits consistent with the requirements of any state the motorist happens to visit.

8

> *has an interest in implementing its policy with respect to UIM recovery where the injured party is covered by a UIM contract issued in Maine.*

2006 WL 1545532 at *2 (Me. Super. 2006) (emphasis added).  See also **Mountain States Tel. & Tel. Co. v. Aetna Cas. & Surety Co.**, 568 P.2d 1123, 1125 (Ariz. App. 1977) (non-existence of a policy delivered or issued for delivery in the state "precludes any cause of action under the Uninsured Motorist Liability Act since that Act applies only when a liability policy of insurance is delivered or issued for delivery."); **Swanson v. Shelter Ins. Co.**, 2003 WL 57415 (Cal. App. 2003) (California UM statute concerning permission to settle has no application to a Kansas resident insured by a Kansas UM/UIM policy who is injured in an auto accident in California); **Snider v. Murray**, 461 So.2d 1051, 1053 (La. 1985) (Louisiana UM law, which on its face affects only automobile policies "delivered or issued for delivery in this state," does not require a policy neither delivered nor issued for delivery in Louisiana to have UM coverage); **Ferris v. Rawn**, 2003 WL 21995256 (Ohio App. 2003) (where policy was issued and delivered to a Tennessee corporation, Tennessee rather than Ohio UIM law applied to commercial automobile insurance policy of injured motorist's employer even though motorist was an Ohio resident, accident occurred in Ohio, and she worked for employer in Ohio).

Moreover, the payment of renewal premiums in a different state from that in which the original insurance contract was made is a continuation of the original contract, rather than the making of a new and independent contract.  See **O'Donnell v. Blue Cross Blue Shield of Wyo.**, 76 P.3d 308, 313-14 (Wyo. 2003).

9

In ***Williams v. Mut. of Omaha***, 297 F.2d 876 (4th Cir. 1962), the question involved was whether Florida law or South Carolina law determined the right of the insurer to decline to accept a renewal premium on a health and accident insurance policy. When the original policy was issued, the insured was a resident of Florida, but he subsequently moved to South Carolina. It was held that the governing law was that of Florida, where the original contract was made. The court rejected the insured's contention that after he moved to South Carolina the renewals of the policy were South Carolina contracts, the interpretation of which was governed by the laws of South Carolina. The court held that if there was a continuing promise by the insurer to extend the coverages into a succession of renewal terms, at the option of the insured, the promise was made in Florida when the original insurance contract was delivered, and even if renewals subsequently occurred in South Carolina, the contract was still governed by Florida law.

Similarly, in ***Bowen v. Inter-State Bus. Men's Accident Ass'n***, 196 N.W. 229 (Wis. 1923), the defendant, a mutual benefit association, had issued in Iowa a policy covering the insured for accidental loss of life. The defendant was an Iowa corporation, and at the time the policy was issued and delivered the insured was a resident of Iowa, but he subsequently moved to Wisconsin, where he resided during the year of his death. The policy contained a provision that it would terminate if the insured failed to pay premiums which were due every 3 months. The court rejected the contention that since the policy was renewed by the continued payment of the premiums after the

insured had moved to Wisconsin, which was a few years prior to his death, the policy was a Wisconsin contract and was governed by Wisconsin law.  If Wisconsin law governed, an exception contained in the policy would have been invalid because it violated a statute requiring that exceptions be printed in boldface type and with greater prominence than any other portion of the text of the policy, but if Iowa law were applicable, such a statutory requirement apparently would not exist.  The court rejected the contention that the insured's payment of premiums while he resided in Wisconsin constituted a remaking of the policy at the time of each payment, and the court concluded that the contract was an Iowa contract when it was issued and delivered, and that it continued to be an Iowa contract, governed by Iowa law, even after the insured moved to Wisconsin.

Accordingly, whether some premium payments were made from Wyoming does not convert the South Dakota policy to a new contract or to a Wyoming contract.  It remained a South Dakota contract subject to mandatory South Dakota UM/UIM coverage as it was issued and delivered in South Dakota where it covered multiple vehicles.  The Wyoming legislature has never sought to regulate the activities of fleet insurers in other states.  More to the point, the Wyoming legislature has never sought to require motorists whose cars are insured in other states to meet Wyoming UM/UIM requirements.

Because the traditional rule of *lex loci contractus* applies in this non-U.C.C. contract issued and delivered in South Dakota to a South Dakota corporation, Plaintiff's

11

UIM claim is time-barred and must be dismissed as she failed to commence this action until 6 years after her cause of action arose.

**C.    Formal execution of settlement documents and actual receipt of settlement funds are not required to start the clock ticking on the statute of limitations.**

South Dakota looks favorably upon meritorious statute of limitations defenses recognizing "[t]he purpose of a statute of limitations is speedy and fair adjudication of the respective rights of the parties." ***Peterson ex rel. Peterson v. Burns***, 635 N.W.2d 556, 564 (S.D. 2001). "Some of the reasons for limiting the right to bring lawsuits are to require claimants to exercise their rights to sue so their claims can be promptly investigated, while witnesses are available, memories are fresh and insurance is still in place." *Id.* at 565. Here, the car accident happened over 10 years ago and Plaintiff settled with the tortfeasor's carrier over 6 years ago, and has no contact whatsoever with the UIM carrier for over 6 years. Indeed, United Fire had closed its file long ago.

In an effort to prevent her stale UIM claim from being time barred, Plaintiff argues that the statute of limitations did not begin to run until actual payment was received by the tortfeasor's insurer following formal execution of the settlement documents. Plaintiff's argument is based on the following policy language:

> **2.**    With respect to damages resulting from an "accident" with a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle", we will pay under the coverage selected under this endorsement only if **a.** or **b.** below applies:

12

>       **a.**     The limit of any applicable liability bonds or policies have been exhausted by judgments or payments[.]

See **Exhibit 9** to Plaintiff's response, Document 27-9, page 14.  This argument is misplaced.

This cited policy language is commonly referred to as an "exhaustion" provision. This provision has not been construed to require actual receipt of payment to trigger a UIM statute of limitations period.  To the contrary, exhaustion occurs "when the liability carrier has **tendered the limits of its policy in a settlement offer** or in satisfaction of a judgment."  **Register v. White**, 599 S.E.2d 549, 697 (N.C. 2004) (emphasis added).  As stated by the Ohio Supreme Court:

> . . . an injured insured satisfies the "exhaustion" requirement in the underinsured motorist provision of his liability insurance policy **when he receives from the underinsured tortfeasor's insurance carrier a commitment to pay an amount in settlement**, the injured party retaining the right to proceed against his underinsured motorist insurance carrier only for those amounts in excess of the tortfeasor's policy limits. The exhaustion clause must be construed as it was intended, *i.e.,* a threshold requirement and not a barrier to underinsured motorist insurance coverage.

**Bogan v. Progressive Cas. Ins. Co.**, 521 N.E.2d 447, 453 (Ohio 1988), *overruled on other grounds by* **Ferrando v. Auto-Owners Mut. Ins. Co.**, 781 N.E.2d 927 (Ohio 2002), *review denied*, 783 N.E.2d (2003).

That is, the exhaustion provision is not a bar to UIM coverage but is instead a threshold requirement.  *See, e.g.,* **Shelton v. Country Mut. Ins. Co.**, 515 N.E.2d 235 (Ill. App. 1987) (holding "[t]he exhaustion clause in no way conditions when a suit can

be filed against Country Mutual, but instead qualifies only when it will pay a claim"). Accordingly, for statute of limitations purposes, a UIM cause of action accrued when Plaintiff learned the tortfeasor was underinsured relevant to the nature and extent of her injuries and damages.

An action accrues when "the plaintiff has actual notice of a cause of action or is charged with notice." ***Strassburg v. Citizens State Bank***, 581 N.W.2d 510, 514 (S.D. 1998); *see SDCL § 17-1-2; SDCL § 17-1-3; see also* ***Haberer v. First Bank***, 429 N.W.2d 62, 68 (S.D. 1988) (quoting ***Myers v. Clavco State Bank***, 687 S.W.2d 256, 263 (Mo. App. 1985) (citation omitted)) (stating "a claim accrues ... when a person 'has some notice of his cause of action, an awareness either that he has suffered an injury or that another person has committed a legal wrong which ultimately may result in harm to him' "). Here, Plaintiff had actual notice of her UIM cause of action in September 2000 when United Fire discussed making a UIM claim with her husband, and three months later in December 2000 in a conversation with Plaintiff regarding the tortfeasor's minimal limits. *See Undisputed Facts #8 and #9 in MSJ.*

The tortfeasor's limits were exhausted when Plaintiff's lawyer forwarded the Allstate policy limits offer to United Fire on August 5, 2004 stating Plaintiff would like to accept the offer and would be looking to Defendant United Fire "to cover her remaining loss under the underinsured motorist portion of her coverage with [United's] policy." *See Correspondence to Bruce Miller dated 8/5/04 attached as* ***Exhibit K*** *to the MSJ.* And, just 8 days later, on August 13, 2004, Defendant United Fire responded to Plaintiff's counsel

extending permission for Plaintiff to accept the policy limits offer from Allstate for $50,000.00.  *See Correspondence to Doug Dumbrill dated 8/13/04* attached as **Exhibit L** *to the MSJ.*

A formal settlement agreement was not required to enforce the settlement for policy limits from the tortfeasor.  A settlement agreement is a contract between the parties to end judicial proceedings. **DiFrancesco v. Particle Interconnect Corp.**, 39 P.3d 1243, 1247 (Colo. App. 2001); **Citywide Bank of Denver v. Herman**, 978 F. Supp. 966, 977 (D. Colo.1997); **Rauch v. Sutphin Elec. Motors, Corp.**, 2007 WL 184667, *4 (D. Colo. 2007).

The fact that parties contemplate preparing a written agreement does not necessarily render a verbal agreement invalid.  **DiFrancesco**, 39 P.3d at 1248.  Instead, a contract may be evidenced by showing that counsel had the authority to extend an offer and that the other party accepted it.  A trial court may summarily enforce a settlement agreement entered into during the litigation if it is undisputed that a settlement exists.  **DiFrancesco**, 39 P.3d at 1247; **Shoels v. Klebold**, 375 F.3d 1054, 1060 (10th Cir. 2004); **U.S. v. Hardage**, 982 F.2d 1491, 1496 (10th Cir.1993).

Therefore, at the latest, there was a settlement for the tortfeasor's policy limits while reserving her UIM claim with United Fire no later than August 13, 2004.  Plaintiff does not dispute that under South Dakota law this lawsuit was not commenced until August 27, 2010, which is more than 6 years after her cause of action accrued.

15

### III.   CONCLUSION

Wherefore, Defendant United Fire & Casualty Company respectfully requests the Court enter an Order finding that Plaintiff's Complaint seeking Underinsured Motorist Coverage is barred by the applicable statute of limitations and enter judgment in favor of United Fire and for such other and further relief as the Court deems proper.

DATED this 20th day of December, 2010.

Respectfully submitted,

By:   s/ L. Kathleen Chaney

L. Kathleen Chaney, Esq.
**LAMBDIN & CHANEY, LLP**
4949 S. Syracuse Street, Suite 600
Denver, Colorado 80237
Telephone: (303) 799-8889
FAX: (303) 799-3700
E-mail:kchaney@lclaw.net
*Attorney for United Fire & Casualty Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of December, 2010, a true and correct copy of the foregoing **REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT UNITED FIRE & CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT BASED ON THE STATUTE OF LIMITATIONS** was sent via the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

Thomas E. Lubnau II, Esquire
Lubnau Law Office, P.C.
PO Box 1028
300 S. Gillette Avenue, Suite 2000
Gillette, WY  82717
(307) 682-1313
tom@etseq.com
*Attorney for Plaintiff*


                                            s/ L Kathleen Chaney